# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| MEGAN VOEKS, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br> v. <br><br> D & A SERVICES, LLC, <br> d/b/a IL D & A SERVICES, LLC, <br><br> Defendant. | Case No.: 20-cv-272 <br><br> **CLASS ACTION COMPLAINT** <br><br> **Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA") and the Wisconsin Consumer Act, Chs. 421-427, Wis. Stats (the "WCA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Megan Voeks is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff a debt incurred for personal, family, or household purposes.

5. Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the debt arose from an agreement or series of agreements to defer payment.

6. Defendant D & A Services, LLC d/b/a IL D & A Services, LLC ("D&A") is a foreign limited liability company with its principal place of business located at 1400 East Touhy Avenue, Suite G2, Des Plaines, Illinois 60018.

7. D&A is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. D&A is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

## FACTS

9. On or about December 18, 2019, D&A mailed a debt collection letter to Plaintiff regarding an alleged debt owed to "Bank of America, N.A." A copy of this letter is attached to this complaint as Exhibit A.

10. Upon information and belief, the alleged debt referenced in Exhibit A was incurred by use of a credit card, which was used only for personal, family, or household purposes.

11. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

12. Upon information and belief, Exhibit A is a form debt collection letter used by D&A to attempt to collect alleged debts.

13. Upon information and belief, Exhibit A is the first written communication Plaintiff received from D&A in reference to the alleged debt referenced in Exhibit A.

14. Exhibit A includes the following representation which largely reflects the statutory debt validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail the consumer along with, or within five days of, the initial communication:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice this office will provide you with the name and address of the original creditor, if different from the current creditor.

15. Exhibit A also includes the following representations:

| D&A# | Current Balance |
|---|---|
| ▇882 | $3,058.14 |

16. Additionally, Exhibit A includes the following representations:

> Your Account has been placed with our office to seek a resolution with you for the Total Amount Due on your account.

17. Exhibit A is confusing and misleading to the unsophisticated consumer.

18. On the face of Exhibit A, it is impossible to determine whether amount that D&A is attempting to collect is static.

19. Exhibit A states that the "Current Balance" of the account is $3,058.14 but also states that "Your Account has been placed with our office to seek a resolution for the Total Amount Due on your account."

20. The unsophisticated consumer would be confused and misled as to whether Exhibit A was only attempting to collect a portion of the "Current Balance" rather than the balance in its entirety. Unless the debt has been accelerated, the "Total Amount Due" on a credit card debt may be less than the "Current Balance." *See Machnik v. RSI Enters.*, 2017 U.S. Dist. 160772, at *6 (E.D. Wis. Sept. 29, 2017) ("with regard to the $1,244.93, the letter variously refers to that sum as being 'owing' and as being 'due.' In the context of a debt, 'owing' an amount is distinguishable from the amount 'due.' For example, a debtor might 'owe' a certain

3

amount on a loan, but only a portion of that amount will be 'due' at a particular time."); *see also Chuway v. Nat'l Action Fin. Servs.*, 362 F.3d 944, 947-48 (7th Cir. 2004).

21. Alternatively, the unsophisticated consumer would also be confused and misled as to whether the phrase "Total Amount Due" implied that the account was bearing interest, and thus may be greater than the "Current Balance," when the consumer received <u>Exhibit A</u>. *See Chuway v. Nat'l Action Fin. Servs.*, 362 F.3d 944, 974-48 (7th Cir. 2004).

22. <u>Exhibit A</u> does not disclose whether the account is bearing interest. If the account is not bearing interest, use of the phrase "Total Amount Due" confusingly and misleadingly implies to the unsophisticated consumer that it is bearing interest. If the account is bearing interest, the failure to clearly disclose that interest is accruing is confusing and misleading. *See Spuhler v. State Collection Servs.*, 2017 U.S. Dist. LEXIS 210895, at *18-19 (E.D. Wis. Dec. 22, 2017) (quoting *Chuway*, 362 F.3d at 949).

23. Upon information and belief, the alleged debt referenced in <u>Exhibit A</u> became delinquent and charged off several months before the letter was mailed. *See* Victoria J. Haneman, *The Ethical Exploitation of the Unrepresented Consumer*, 73 Mo. L. Rev. 707, 713-14 (2008) ("A credit card account is characterized as a 'charge-off' account (or worthless account for taxable purposes) when no payment has been received for 180 days.").

24. Upon information and belief, the amount of the debt at the time of charge-off was $3,058.14, and because the creditor stopped mailing periodic account statements to Plaintiff, interest did not continue to accrue on the account after the debt charged off. *See* 12 C.F.R. § 226.5(b)(2)(i); *Wilder v. J.C. Christensen & Assocs.*, 2016 U.S. Dist. LEXIS 168440, at *15-16 (N.D. Ill. Dec. 6, 2016).

4

25. Even where the creditor has ceased mailing periodic account statements for several months, whether the creditor actually "waived" its right to add interest is not always clear.; *Peters v. Northland Grp., Inc.*, 2014 U.S. Dist. LEXIS 137643, at *1-2 (W.D. Mo. Sep. 30, 2014) ("courts have consistently held that creditors may charge interest at a state's statutory rate even after the creditor charges off the debt and waives the right to collect interest at the contractual rate); *Simkus v. Cavalry Portfolio Servs., LLC*, 12 F. Supp. 3d 1103, at *1109-10 (N.D. Ill. Jan. 27, 2014) (whether original creditor waived its right to collect interest, and consequently whether the debt buyer was legally adding interest, was a question of fact for the trial court); *see also Ruge v. Delta Outsource Group, Inc.*, 2017 U.S. Dist. LEXIS 35047, at *10-11 (N.D. Ill. Mar. 13, 2017) ("A jury could not find implied waiver based on the two months that Comenity Bank did not charge interest when Ruge's credit card agreement allowed the bank to delay enforcing its rights without waiver ….").

26. <u>Exhibit A</u> fails to state the amount of the debt in a non-confusing manner. The unsophisticated consumer would be confused as to whether the "Total Amount Due" was actually equal to the "Current Balance," or some other lesser or greater amount. *Machnik*, 2017 U.S. Dist. LEXIS 160772, at *6 (E.D. Wis. Sept. 29, 2017) (amount due may be less than the "current balance"); *Chuway*, 362 F.3d at 947-48 (debt collection letter stating that the consumer could call for her "most current balance information" implied that the amount of the debt may have increased because of interest or other charges).

27. Upon information and belief, the account was not accruing interest at the time <u>Exhibit A</u> was mailed.

28. Upon information and belief, neither D&A nor the creditor intended to add interest to Plaintiff's account.

5

29. Upon information and belief, neither D&A nor the creditor adds interest to accounts like Plaintiff's in the regular course of business.

30. The Seventh Circuit explained in *Chuway*, 362 F.3d at 949, that "[a] letter can be confusing even to a sophisticated reader though it does not contain an outright contradiction."

31. The apparent contradiction and confusion raised by Exhibit A vacillating between "Current Balance" and "Total Amount Due" is gratuitous. Had Exhibit A consistently used "Current Balance" or "Total Amount Due" rather than wavering between both terms, it would not have engendered such gratuitous and unnecessary confusion. *See Chuway*, 362 F.3d at 949 ("Our conclusion does not place debt collectors on a razor's edge ….").

32. Plaintiff was confused and misled by Exhibit A.

33. The unsophisticated consumer would be confused and misled by Exhibit A..

### *The FDCPA*

34. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("Spuhler I") ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin.*

*LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l& Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes … do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lanev. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5

7

(S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

35. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

36. Misrepresentations of substantive information about the debt collector or the debt, including the timing of deadlines for settlement offers, injures or risks injury to interests expressly protected by Congress in the FDCPA. *See Degroot v. Client Servs.,* 2020 U.S. Dist. LEXIS 6677 (E.D. Wis. Jan. 15, 2020) ("[A]n informational injury can be concrete when the plaintiff is entitled to receive and review substantive information."); *Oloko v. Receivable Recovery Servs.*, 2019 U.S. Dist. LEXIS 140164 (N.D. Ill. Aug. 19, 2019); *Encore Receivable Management, Inc.*, 18-cv-1484-WED, 2019 U.S. Dist. LEXIS 134377 (E.D. Wis. Aug. 9. 2019); *Richardson v. Diversified Consultants*, No. 17-cv-4047, 2019 U.S. Dist. LEXIS 118786 *10-11 (N.D. Ill. July 17, 2019) ("the receipt of a communication misrepresenting the character of the debt (here, the amount owed) is the kind of injury that Congress sought to prevent through the FDCPA. 'Such an injury falls squarely within the ambit of what Congress gave consumers in the

FDCPA: 'a legally protected interest in certain information about debts,' with 'deprivation of information about one's debt (in a communication directed to the plaintiff consumer) a cognizable injury.'" (internal citations omitted); *see also Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017); *Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, at *1-2 (N.D. Ill. Sept. 20, 2016); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016) (holding that Plaintiff had standing to challenge misleading communication sent to him because the communication violated his "right to be free from such misleading communications"). Such misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

37. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

38. 15 U.S.C. § 1692e(2)(A) specifically prohibits: "The false representation of — the character, amount, or legal status of any debt."

39. 15 U.S.C. § 1692e(5) specifically prohibits the "the threat to take any action that cannot legally be taken or that is not intended to be taken."

40. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

41. 15 U.S.C. § 1692f generally prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."

42. 15 U.S.C. § 1692f(1) specifically prohibits the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

43. 15 U.S.C. § 1692g(a) states:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> (1) the amount of the debt;

44. The Seventh Circuit has held that a debt collector must state the correct amount of the debt on the date a letter is sent to a consumer. *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000):

> It is no excuse that it was "impossible" for the defendants to comply when as in this case the amount of the debt changes daily. What would or might be impossible for the defendants to do would be to determine what the amount of the debt might be at some future date if for example the interest rate in the loan agreement was variable. What they certainly could do was to state the total amount due--interest and other charges as well as principal--on the date the dunning letter was sent. We think the statute required this.

45. While *Miller* addressed a debt collector's obligation to provide the amount of the debt under 15 U.S.C. § 1692g(a)(1), the Seventh Circuit has held that the standards for claims under § 1692e and § 1692g are the same. *McMillan v. Collection Professionals, Inc.*, 455 F.3d 754, 759 (7th Cir. 2006).

> We cannot accept the district court's view that claims brought under § 1692e or § 1692f are different from claims brought under § 1692g for purposes of Rule 12(b)(6) analysis. Whether or not a letter is 'false, deceptive, or misleading' (in violation of § 1692e) or 'unfair or unconscionable' (in violation of § 1692f) are inquiries similar to whether a letter is confusing in violation of § 1692g. After all, as our cases reflect, the inquiry under §§ 1692e, 1692g and 1692f is basically the same: it requires a fact-bound determination of how an unsophisticated consumer would perceive the letter.")

46. The Seventh Circuit explained in *Muha v. Encore Receivable Mgmt.*, 558 F.3d 623, 629-30 (7th Cir. 2009), that a debt collector that uses gratuitous and confusing language bears the burden of explaining why that language was used and justifying its inclusion.

10

### *The WCA*

47. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

48. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n.15, 596 N.W.2d 786 (1999) (citations omitted).

49. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

50. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies, including punitive damages. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

51. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

52. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court

11

analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

53. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

54. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer . . . in such a manner as can reasonably be expected to threaten or harass the customer."

55. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer . . . ."

56. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

57. Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

## COUNT I – FDCPA

58. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

59. <u>Exhibit A</u> states the "Current Balance" of the debt is $3,058.14, but also informs the consumer that the debt collector seeks resolution "for the Total Amount Due on your account."

60. Exhibit A fails to state the amount of the debt in a non-confusing manner. Where a debt has not been accelerated, the "Total Amount Due" on the account may be less than the "Current Balance."

61. Exhibit A fails to state the amount of the debt in a non-confusing manner. If the debt buyer has decided to start charging interest, the "Total Amount Due" on the account may be greater than the "Current Balance."

62. Exhibit A impliedly threatens the unsophisticated consumer that interest is accruing on the account.

63. Defendants violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(5), 1692e(10), and 1692f, 1692f(1), and 1692g(a)(1).

## COUNT II – WCA

64. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

65. Exhibit A states the "Current Balance" of the debt is $3,058.14, but also informs the consumer that the debt collector seeks resolution "for the Total Amount Due on your account."

66. Exhibit A fails to state the amount of the debt in a non-confusing manner. Where a debt has not been accelerated, the "Total Amount Due" on the account may be lesser than the "Current Balance."

67. Exhibit A fails to state the amount of the debt in a non-confusing manner. If the debt buyer has decided to start charging interest, the "Total Amount Due" on the account may be greater than the "Current Balance."

68. <u>Exhibit A</u> impliedly threatens the unsophisticated consumer that interest is accruing on the account.

69. Defendants violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), and 427.104(1)(L).

## CLASS ALLEGATIONS

70. Plaintiff brings this action on behalf of a class.

71. The Class consists of: (a) all natural persons in the State of Wisconsin (b) who were sent by D&A a collection letter in the form of <u>Exhibit A</u> to the complaint, (c) seeking to collect a debt for personal, family, or household purposes, (d) between February 19, 2019 and February 19, 2020, inclusive, (f) and was not returned by the postal service.

72. The Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of the Class.

73. There are questions of law and fact common to the members of the Class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendant complied with the FDCPA.

74. Plaintiff's claims are typical of the claims of the members of the Class. All are based on the same factual and legal theories.

75. Plaintiff will fairly and adequately represent the interests of the members of the Class. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

76. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

77. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: February 19, 2020

**ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com